# United States District Court
# Northern District of Indiana

CHARLES N. JOHNS,

    Plaintiff,

v.

BRUCE LEMMON, et al.,

    Defendants.

Civil Action No. 3:12-CV-232 JVB

## OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Charles Johns (DE 56) and Defendants Bruce Lemmon and Mark Sevier (DE 62). Plaintiff sued Defendants for declaratory and injunctive relief because Defendants will not accommodate his desire to receive food the day before the Sabbath to store in his cell for consumption on the Sabbath.

**A.**     **Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment*

*Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, In*s., 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the court now turns to the factual basis for the parties' motions and then to their substance.

**B.     Facts**

Plaintiff Charles Johns is an Observant Jew who is incarcerated at the Miami Correctional Facility ("MCF") of the Indiana Department of Corrections ("DOC"), which receives funding from the federal government. Defendant Bruce Lemmon is the commissioner of DOC. Defendant Mark Sevier is the superintendent of MCF.

Plaintiff's dispute with Defendants stems from the fact that Jewish law prohibits a Jew from working on the Sabbath (from sundown on Friday until sundown on Saturday) and from having non-Jews perform services for them that they may not themselves do. Benefitting from the services of a non-Jew performed on the Sabbath is considered a sin. Included in the prohibition of work on the Sabbath is *bishul*, meaning the use of heat to alter the quality of an item. The prohibition does not apply to reheating food, so long as the reheating does not cook the food. In order to observe these laws, Plaintiff is asking that Defendants provide him with pre-cooked lunches and dinners for Saturday on Friday, which he would take back to his cell,

store in an ice cooler, and reheat over a hot pot he is allowed to keep in his cell, or alternatively provide him with cold food on Friday, such as peanut butter and hard boiled eggs, for consumption on the Sabbath.

From at least November 2011 until April 2012, food service employees at MCF did give Plaintiff his meals for Saturday on Friday. However, when Deanna Henderson, an employee of Aramark Correctional Services LLC (Aramark is under contract with DOC to provide food services at MCF) learned of this arrangement, she halted it because "[o]ffenders within [MCF] are allowed one individually prepared meal at set times during the day." (Declaration of Deanna Henderson, DE 63-3, ¶ 6.) According to Tonita Smith, an Aramark employee who is the food service director at MCF, allowing offenders to consume their meals "more than a day after they are prepared for consumption presents food safety concerns as the safety and quality of that food cannot be guaranteed at that point." (Declaration of Tonita Smith, DE 63-4, ¶ 15.)

The prisoners at MCF are allowed to keep coolers in their cells. For non-religious reasons, many prisoners at MCF, including Plaintiff's cell-mate, store pre-cooked food in the coolers in their cells for consumption at a later time. Prisoners are able to order cooked and prepared foods through several services offered at MCF: the Fresh Favorites program run by Aramark, the PLUS program, and the American Legion. When prisoners buy hot foods from these programs, they receive the food pre-cooked. They regularly store the food in coolers in their cells and reheat it in the microwave or with a hot pot. According to Plaintiff, some prisoners have stored food in their coolers for up to five days.

Since he no longer receives meals for the Sabbath on Friday, Plaintiff eats kosher food previously bought from the MCF commissary, such as rice and beans, and the bread that is

provided to prisoners on kosher diets every other day. The meals he formerly received from Aramark generally consisted of servings of meat, vegetables, and starch. He believes the kosher items that can be bought at the commissary are nutritionally inadequate as compared with Aramark's offerings. Moreover, he does not always have the financial means to feed himself from the commissary. There have been times, such as the last three Sabbaths in March 2013, when his only food for the Sabbath was bread because he had insufficient funds to buy anything from the commissary.

Plaintiff's inmate trust account records show that he was credited with about $835 from January 1, 2012, through February 27, 2013, at least $427 of which he spent at the commissary on food items. The balance in his account on February 27, 2013, was $.43. Plaintiff's current income consists of "idle pay" from the DOC of between $9 and $12.50 a month, 15% of which is deducted and deposited in a reentry account. He also receives sporadic gifts of money from his mother. His funds must pay for stamps, telephone cards, and hygiene items such as toothpaste, soap, and shampoo.

Defendants have provided a list of kosher items available to Plaintiff at the MCF commissary. (*See* DE 63-2 at 3–9.) They consist mainly of various candy bars, salty snacks, cookies, crackers, and snack cakes, but do include some canned fish, peanut butter, and fruit juices. Most items cost under $3.

This is not Plaintiff's first suit against a DOC commissioner involving the practice of his religion. In 2005 he sued because he was not receiving a kosher diet. The case resulted in a private settlement agreement. When he was moved from the Wabash Valley Correctional Facility to MCF, he again had difficulty receiving kosher meals and filed a breach of contract

4

action alleging failure to comply with the private settlement agreement. That suit resulted in another private settlement agreement. The agreement includes the following provision:

> Charles Johns will be provided a kosher diet card by the Indiana Department of Correction. This may be accomplished . . . by moving Mr. Johns to a facility that has a certified kosher kitchen . . . . Alternatively, Mr. Johns will be provided, upon presenting the diet card, certified kosher prepackaged meals for every lunch and dinner. The parties agree that the meals will not be cooked until such time as Charles Johns presents his diet card for the lunch or dinner meal . . . .

**C.     Discussion**

Plaintiff argues that DOC's failure to give him Sabbath meals before the Sabbath imposes a substantial burden on the exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and also violates his First Amendment rights. Defendants claim that not only does their refusal to accommodate Plaintiff's desire to receive Sabbath meals on Friday not violate his rights, but also that to accede to his request would be a violation of the private settlement agreement.

**1.     *Alleged Violation of the Private Settlement Agreement***

The Court does not find in the private settlement agreement any language that dictates *when* the Plaintiff must be served kosher meals. It requires Plaintiff to present his kosher diet card before receiving kosher meals, but says nothing that could be construed as prohibiting him from receiving meals for the Sabbath in advance. The agreement is silent on the issue. Accordingly, the private settlement agreement is no bar to granting Plaintiff the relief he requests.

## 2. *RLUIPA*

Title 42 U.S.C. § 2000cc-1 provides as follows:

(a) General rule
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

   (1) is in furtherance of a compelling governmental interest; and

   (2) is the least restrictive means of furthering that compelling governmental interest.

Defendants argue that their current policy of not allowing Plaintiff to receive his Sabbath meals on Friday does not impose a substantial burden on the exercise of his religion because MCF has a commissary where Plaintiff may buy packaged foods and drinks. Plaintiff responds that requiring him to pay for food that is nutritionally inadequate when his only guaranteed source of funds is less that $13 a month is a substantial burden on religious exercise. Further, Plaintiff maintains that, even if he always had the means to pay for his Sabbath meals, forcing him to underwrite his religiously mandated diet imposes a substantial burden on his religious exercise.

The Seventh Circuit has stated that a "regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise impracticable." *Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 761 (7th Cir. 2003). Government conduct imposes a substantial burden on religious exercise when it puts "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)).

Defendants rely on two Eighth Circuit cases to support their contention that requiring Plaintiff to buy commissary food for his Sabbath is not a substantial burden on his religious exercise. In *Love v. Reed*, 216 F.3d 682 (8th Cir. 2000), a prisoner requested that he be provided with food in his cell on the day before his Sabbath (which he observed on Sundays) in order to avoid eating food prepared by others on the Sabbath. The prison authorities argued the prisoner was free to exercise his religion because he could buy kosher food at the commissary. The Eighth Circuit upheld the trial court's judgment that the prisoner had to spend any money he obtained for Sabbath food from the commissary, but that the prison must give him food for the Sabbath on any Saturday when he did not have funds. *Id.* at 689.

In *Patel v U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008), Patel, a federal prisoner, was dissatisfied with the *halal* Islamic diet provided by the BOP for evening meals. The BOP offered two meal plans, the "main line" and the "Common Fare." Participants in the main line plan could self-select vegetarian items from a hot bar. This option did not satisfy Patel because other prisoners could contaminate the vegetarian items with forbidden foods. The Common Fare meals are kosher meals, but kosher meats, served ten out of every fourteen evening meals, did not satisfy his requirement that he consume no meat unless the animal is slaughtered during a prayer to Allah. He could also buy *halal* vegetarian entrees from the commissary and substitute them for kosher meat entrees. The Eighth Circuit held that requiring him to buy commissary meals did not "significantly inhibit, meaningfully curtail, or deny Patel a reasonable opportunity to practice his religion." *Id.* at 814.

Plaintiff relies on a Fifth Circuit case to support his contention that requiring him to buy Sabbath food constitutes a substantial burden on the exercise of his religion. In *Moussazadeh v.*

7

*Texas Dept. of Criminal Justice*, 703 F.3d 781, 793 (5th Cir. 2013), no kosher meals were available to the prisoner from the prison dining hall but he could buy them from the commissary. The court held that denial of religiously sufficient food where food is a generally available benefit constitutes a substantial burden on the exercise of religion. *Id.* at 793.

The Court agrees with Plaintiff that requiring him to pay for his Sabbath food, thereby denying him an essential benefit that is provided to all prisoners, in order to practice his faith, is a substantial burden on his religious exercise. Defendants' policy amounts to a fine on Plaintiff for abiding by a tenet of his faith.

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Thomas v. Review Bd.*, 450 U.S. at 717–18.

The Court must next determine if, as Defendants maintain, there are contested issues of material fact as to whether they have demonstrated that refusing to provide Plaintiff with food for the Sabbath on Fridays is in furtherance of a compelling governmental interest.

The compelling governmental interest Defendants claim their policy furthers is food safety. In support of their claim they offer the statements of Smith, the food service director at MCF, that offenders are expected to eat their meals immediately upon receiving them and that allowing them to eat their meals more than a day after it is prepared presents food safety concerns. Plaintiff maintains that accepting these statements as true does not create a contested issue of material fact because he will eat his Sabbath meals during the day after he receives them after refrigerating them in a cooler for less than 24 hours. Furthermore, for a period of about five

months, Plaintiff was allowed to receive his Sabbath meals a day in advance. Moreover, the practice at MCF is to allow prisoners to keep food stored in iced coolers for a number of days.

The Court determines that there are no contested issues of material fact as to whether denying Plaintiff Sabbath meals a day in advance is in furtherance of a compelling state interest. While the safety of the food MCF serves its prisoners is obviously an important state interest, there is no evidence whatsoever that food safety is compromised by delivering his Sabbath meals a day early for storage in an iced cooler. The fact that this practice was permitted for some months and that other prisoners routinely store food for consumption the next day without any evidence of ill effects demonstrates the opposite. The Court finds as a matter of law that MCF has not demonstrated that denying Plaintiff Sabbath meals a day in advance is in furtherance of a compelling state interest. Moreover, Defendants have not demonstrated that failing to provide Plaintiff with any type of food on Fridays for consumption on the Sabbath is the least restrictive means of insuring the safety of Plaintiff's food.

**D.     Conclusion**

For the reasons set forth above, Plaintiff's motion for summary judgment (DE 56) is GRANTED and Defendants' motion for summary judgment (DE 62) is DENIED. The parties are ordered to file a joint proposed permanent injunction order consistent with this opinion by October 28, 2013. If they cannot agree on a proposed order, each shall file a separate proposed order by that date, together with a brief explaining why the proposed order should be entered.

SO ORDERED on September 27, 2013.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division